| | |
|---|---|
| CAROL A. MOLUS and MICHAEL MOLUS, <br><br>　　　　　　Plaintiff, <br><br>v. <br><br>FRANK SWAN, CHRISTOPHER KIERNAN, and DIANA MAILLY, <br><br>　　　　　　Defendants. <br>_____ | Civil No: 05cv0452-B(WMc) <br><br>ORDER GRANTING-IN-PART AND DENYING-IN-PART SWAN'S MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION FOR SANCTIONS |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

## I.　INTRODUCTION

Defendant Frank Swan ("Swan") moves the Court to dismiss the Second Amended Complaint of Carol and Michael Molus ("C. Molus" and "M. Molus," respectively, "Plaintiffs," collectively) on the grounds that the claims are barred by the statute of limitations, the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6), it fails to comply with Fed. R. Civ. P. 8 and it fails to plead fraud with specificity as required by Fed. R. Civ. P. 9(b).  Swan, joined by Defendants Diana Mailly ("Mailly") and Christopher

1

Kiernan ("Kiernan") also have moved for sanctions against Plaintiffs and their attorneys under Fed. R. Civ. P. 11. Plaintiffs did not file an opposition to either motion.[1] For the reasons herein, Swan's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendants' motion for sanctions is **DENIED**.

## II. BACKGROUND

The instant case arises from an attorney-client relationship between Gerald Wilson ("Wilson"), Swan, Mailly and Kiernan and their former clients, Plaintiffs C. And M. Molus during the time period beginning on or about January 1996 and terminating on March 6, 2001. Plaintiffs were investigated and charged with crimes related to failure to pay income taxes between 1991-1994. Wilson and Swan were employed beginning on or about January 1996 to represent M. Molus and C. Molus against charges of criminal tax evasion. Additionally, Mailly, a certified public accountant, and Kiernan, also an attorney, were retained by Swan and Wilson to assist with the Molus' defense. Prior to the conviction of Plaintiffs in February 2002, on March 6, 2001, Plaintiffs terminated Swan, Wilson, Mailly and Kiernan.

Plaintiffs initially filed complaints in California state court in 2003 on state law claims which were dismissed.[2] The instant case was filed by Plaintiffs in Federal Court on

---

[1] Two weeks after the opposition was due, on the day of the scheduled motion hearing, Plaintiffs filed an ex parte application for an extension of time to file their oppositions. Plaintiffs' attorney Mr. Dollinger claimed his office building had been damages by rain and condemned. He did not provide dates of these events, nor explain why local co-counsel Mr. Heyman could not have timely filed the opposition briefs and/or timely filed for an extension of time. The Court therefore denied the ex parte application and informed the parties that the motions would be considered solely on the papers already filed with the Court.

[2] In February 2003, C. Molus filed suit in California Superior Court against Swan for legal malpractice. These claims were dismissed as barred by the applicable one-year statute of limitations. C. Molus then filed a first amended complaint against Swan in state court alleging breach of contract, breach of implied covenant of good faith and fair dealing, fraud, misrepresentation, and conversion. In January 2004, the state court dismissed the breach of contract, breach of implied covenant of good faith and fair dealing, and conversion claims, finding that each of these claims was based in legal malpractice and thus subject to the one-year statute of limitations which began to toll in March 2001. With respect to the fraud and misrepresentation claims, the state court found these two claims to constitute one cause of action; this cause of action was dismissed with leave to amend because fraud

1  March 7, 2005, naming Swan and Wilson as defendants ("the Original Complaint"). Swan
2  was dismissed from the case for Plaintiffs' failure to serve process.  Plaintiffs filed a first
3  amended complaint (hereinafter "1st Am. Complaint") on June 16, 2006, naming Wilson,
4  Swan, Mailly and Kiernan.  The 1st Am. Complaint alleged four causes of action under
5  state law - fraud, misrepresentation, conversion, and breach of contract - and four claims
6  under the RICO statutes, 18 U.S.C. §1961 et seq.

7  On March 21, 2007, the Court dismissed all causes of action against Wilson with
8  prejudice based on res judicata from Plaintiffs' state actions.  As to Swan, Mailly and
9  Kiernan, the state law claims were dismissed with prejudice. These claims were barred by
10 the statute of limitations. Additionally, these claims were previously raised and dismissed
11 on the same grounds in Plaintiffs' state court cases.  The four RICO claims were dismissed
12 with leave to amend.  These claims failed to plead with specificity under Fed. R. Civ. P.
13 9(b), and they were barred by the statute of limitations.  Additionally, one count failed to
14 state a claim under Fed. R. Civ. P 12(b)(6) and one count required more definite statement
15 under Fed. R. Civ. P. 12(e).

16 Plaintiffs filed a second amended complaint ("2nd Am. Complaint") on May 15,
17 2007.  This complaint names Swan, Mailly and Kiernan as defendants and pleads four
18 counts under the RICO statutes. The focus of the 2nd Am. Complaint, and the basis for the
19 RICO allegations, is the alleged fraudulent billing scheme engaged in by Defendants Swan,
20 Mailly and Kiernan and their associate (now not a named defendant) Wilson during the
21 attorney-client relationship.

22 **III.   STANDARD OF LAW**

23 A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)
24 tests the legal sufficiency of the claims in the complaint.  "While a complaint attacked by a

---

had not been pled with the required particularity.  C. Molus did not file another amended complaint and the case terminated.

Also in February 2003, M. Molus filed a complaint in state court against Wilson alleging legal malpractice.  The complaint was later amended to claims for breach of contract, breach of implied covenant of good faith and fair dealing, fraud, misrepresentation, and conversion.  The case was dismissed after M. Molus failed to comply with the court's discovery orders and Wilson's motion for sanctions was granted.

1 Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the]
2 allegations must be enough to raise a right to relief above the speculative level." Bell
3 Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 -1965 (2007).  The court must accept as
4 true all material allegations in the complaint, as well as reasonable inferences to be drawn
5 from them, and must construe the complaint in the light most favorable to plaintiff.  NL
6 Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Smith v. Jackson, 84 F.3d 1213,
7 1217 (9th Cir. 1996); Simpson, 452 F.3d at 1046.  However, "conclusory allegations of law
8 and unwarranted inferences are insufficient to defeat a motion to dismiss." Adams v.
9 Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004).  "The pleading must contain something
10 more than a statement of facts that merely creates a suspicion of a legally cognizable right
11 of action." Bell Atlantic, 127 S.Ct. at 1965.
12  "Generally, a district court may not consider any material beyond the pleadings in
13 ruling on a Rule 12(b)(6) motion." Hal Roach Studios v. Richard Feiner and Co., 896 F.2d
14 1542, 1555 n.19 (9th Cir. 1990) (citing Fort Vancouver Plywood Co. v. United States, 747
15 F.2d 547, 552 (9th Cir. 1984)).  "However, material which is properly submitted as part of
16 the complaint may be considered." Id. at 1555 n. 19 (citing Amfac Mtg Corp. v. Arizona
17 Mall of Tempe, 583 F.2d 426 (9th Cir. 1978)). Additionally, "matters of public record"
18 may be properly considered. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.
19 2001).
20 **IV.    POTENTIAL GROUNDS FOR DISMISSAL OF THE COMPLAINT**
21     **A.    Fed. R. Civ. P 12(b)(6)**
22         **1.    General requirements for claims under RICO**
23 All allegations under the RICO statutes 18 U.S.C.§1961 et seq. have in common
24 three elements: (1) racketeering activity, (2) in a pattern, and (3) the involvement of an
25 enterprise.  Swan argues that Plaintiffs have failed to sufficiently allege each of these
26 elements.  However, as set out below, the Court finds that the general allegations contained
27 in Plaintiffs' 2nd Am. Complaint are sufficient.
28  Racketeering activity is defined in 18 U.S.C. § 1961(1) as any one of the acts listed

therein, including mail fraud and wire fraud.  Plaintiffs have alleged mail fraud, which requires a scheme to defraud for obtaining money or property, transmitted by wire/mail for the purpose of executing the scheme. 18 U.S.C. §§ 1341, 1343.   Plaintiffs allege that Defendants had a scheme to loot Plaintiffs' trust bank accounts through false billing statements and kickbacks; this was accomplished through the transmittal of the false billing statements by mail, facsimile and other means of electronic communication. (2nd Am. Complaint ¶¶ 51-56, 70-77.)

A pattern of activity is defined under section 1961(5) as two or more acts of racketeering within ten years; plaintiff must plead the relatedness and continuity of the acts to establish a pattern.  H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240-42 (1989).  Here, Plaintiffs have alleged a series of mailings and other electronic transmission of false billing statements, all related to Defendants' scheme to defraud them of money and property.  These acts began in March 1996 and continued through June 28, 2002.  (2nd Am. Complaint ¶¶ 48, 51-52, 66, 70-72.)

An enterprise may be an individual, partnership, association, or even a group of individuals not constituting a legal entity.  18 U.S.C. § 1961(4).  The allegation of "enterprise" also must include an alleged structure for decision making separate from the alleged racketeering activities.  Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1112 (9th Cir. 2003).  Here, Plaintiffs have alleged that the enterprise consisted of Swan as the hub with Kiernan and Mailly acting as the "spokes" of an enterprise designed ostensible to provide legal services as well as to loot Plaintiffs' trust accounts.  (2nd Am. Complaint ¶¶ 32-35.)

**2.    Pleadings under specific RICO sections**

Each count under a specific RICO section must plead additional required elements. Here, the Court finds that two of the four counts pled in Plaintiffs' 2nd Am. Complaint are deficient, whereas the remaining two counts are sufficiently pled.

Count I improperly attempts to plead a violation under § 1961.  This is the definitions section of the statute and does not, by itself, set out a separate actionable claim. Count I refers in passing to a violation of § 1962(b) (2nd Am. Complaint ¶ 116) but then

concludes Defendants have violated subsections (c) and (d) (id. at ¶ 121). The Court ordered a more definite statement of this count in Plaintiff's 1st Am. Complaint. Plaintiffs failed to correct this deficiency here. The district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint. Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003). Therefore, Count I is **DISMISSED WITH PREJUDICE**.

Count II, although titled as a violation of § 1962(c)(d), alleges in its text a violation of subsection (b) (2nd Am. Complaint ¶¶ 125-126). The Court finds that Plaintiffs have pled sufficient facts to support a violation under subsection (b) and/or (c) and thus interprets Count II to sufficiently plead violations under both subsections.

An allegation under § 1962(b) must allege: "1) the defendant's activity led to its control or acquisition over a RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise. . . . [and 3) ] a specific nexus between the control of the enterprise and the racketeering activity." Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003). The 2nd. Am. Complaint alleges that Swan controlled the enterprise consisting of Mailly and Kiernan, and through this control created a system of false billings and kickback schemes that defrauded Plaintiffs of their money. (2nd Am. Complaint ¶¶ 95, 106-112.)

Subsection (c) requires an allegation of "a structure for the making of decisions separate and apart from the alleged racketeering activities." Id. at 831. Here, Plaintiffs allege the organization of Swan, Mailly and Kiernan set up to represent Plaintiffs in their legal work, which was then used to commit the alleged fraud. (2nd Am. Complaint ¶¶ 25-36.)

Count III fails to properly plead a violation under § 1962(a); it suffers from the same defect found in Plaintiffs' 1st Am. Complaint. Subsection (a) requires an allegation that the injury alleged was caused by the use or investment of income derived from the pattern of racketeering. Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1109 (9th Cir. 2003). Simply an allegation that the injury arose from the racketeering acts, rather than the subsequent use

1 of the proceeds from these acts is insufficient. <u>Nugget Hydroelectric, L.P. v. Pacific Gas
2 and Elec. Co.</u>, 981 F.2d 429, 437 (9th Cir. 1992). Here, Plaintiffs allege that Defendants
3 used or otherwise invested money from the racketerring acts (2nd Am. Complaint ¶ 137),
4 but other than the conclusory "[t]hat by reason of the forgoing Plaintiffs have sustained
5 damages no less than One Million Dollars ($1,000,000.00)," no injury from the use or
6 investment of the proceeds is alleged. Moreover, there do not appear to be any facts within
7 the entire complaint that would sustain an allegation under § 1962(a). Therefore, Count III
8 is **DISMISSED WITH PREJUDICE**.

9 <u>Count IV</u> pleads conspiracy under subsection (d). This subsection requires an
10 allegation of agreement, which need not be express but may be "inferred from the words,
11 actions, or interdependence of activities and persons involved." <u>Oki Semiconductor Co. v.
12 Wells Fargo Bank, Nat. Ass'n</u>, 298 F.3d 768, 775 (9th Cir. 2002). These allegations are
13 found in the complaint. (2nd Am. Complaint ¶¶ 48, 66, 127.)

14 In sum, the Court finds that Plaintiffs have sufficiently pled RICO violations under
15 subsections (b), (c) and (d); Swan's motion to dismiss these claims (Counts II and IV) is
16 **DENIED**. Because Counts I and III fail to state a claim, Swan's motion to dismiss these
17 counts is **GRANTED**; Counts I and III are **DISMISSED WITH PREJUDICE**.

18     **B.    Fed. R. Civ. P 9(b)**

19 Rule 9(b), which demands pleading with particularity, applies to RICO claims.
20 <u>Moore v. Kayport Package Exp., Inc</u>., 885 F.2d 531, 541 (9th Cir. 1989). The pleading
21 must state "must identify the time, place, and manner of each fraud plus the role of each
22 defendant in each scheme." <u>Id.</u> Although Swan argues that the 2nd Am. Complaint lacks
23 sufficient detail as to manner and place, the Court finds the pleadings are specific enough to
24 meet Rule 9(b) requirements. Plaintiffs alleged that false billing statements were submitted
25 by Mailly to M. Molus (<u>id.</u> at ¶ 51) and from Kiernan to Plaintiffs' business Mexmil (<u>id.</u> at
26 ¶ 70). Plaintiffs allege that these statements contained bills for non-existent accounting and
27 legal services and for services related to illegal conduct. (<u>Id.</u> at ¶¶ 51, 70.) Plaintiffs list
28 specific dates for each false billing statement. (<u>Id.</u> at ¶¶ 52, 72.) Therefore, Swan's motion

to dismiss on this ground is **DENIED**.

### C. Fed. R. Civ. P. 8

Fed. R. Civ. P. 8 requires that a pleading provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Swan contends that Plaintiffs have failed to meet this requirement because the allegations include "19 rambling long-winded, introductory pages" before listing a first cause of action.

The Court, however, finds that Plaintiffs' 2nd Am. Complaint is not so deficient. The introductory pages are arranged in sections to set out background facts and common elements of the RICO claims. These general allegations are followed by four specific causes of action. While there is some repetition, the pleadings are not rambling or disorganized in a manner that would obscure that nature of the claims. Swan's motion on this ground is **DENIED**.

### D. Statute of limitations

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

Civil claims under RICO are subject to a four-year statute of limitations. Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001) (citing Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987). The Ninth Circuit applies an "injury discovery" rule to determine when the statute of limitations begins to run: "[The] period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." Id. at 1109; Grimmett v. Brown, 75 F.3d 506, 512 (9th Cir. 1996) (holding that the injury discovery rule applies to civil RICO claims); Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 365 (9th Cir. 2005). A plaintiff may be deemed to have constructive knowledge of the injury when "it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [injury]." Pincay, 238 F.3d at 1110. The "discovery of the injury, not discovery of the

other elements of a claim, is what starts the clock." <u>Rotella v. Wood</u>, 528 U.S. 549, 555 (2000).

The injury discovery rule also includes the "separate accrual rule." This "provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." <u>Grimmett v. Brown</u>, 75 F.3d 506, 510 (9th Cir. 1996). The corollary to this rule provides that "damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period." <u>Id.</u> at 512.

Here, Plaintiffs allege a pattern of false billings that began on or about January 1996 and ended June 28, 2002. (2nd. Am. Complaint ¶¶ 47, 55, 72.) The First Amended Complaint naming Defendants was filed on June 16, 2006.[3] Thus, any acts before June 16, 2002 fall outside the four year statute of limitations period. The only acts alleged after June 16, 2002 are two invoices sent on June 28, 2002. One was sent by Mailly to M. Molus in the amount of $9,900 (<u>id.</u> at ¶¶ 51-52) and another sent by Kiernan to Plaintiffs' business Mexmil for $19,870 (<u>id.</u> at ¶¶ 70, 72). The remaining acts all occurred before June 16, 2002. Under the injury discovery rule, any cause of action created solely by these acts is barred by the statute of limitations.

In some circumstances, fraudulent concealment may toll the statute of limitations for RICO claims. <u>Pincay v. Andrews</u>, 238 F.3d 1106, 1110 (9th Cir. 2001). However, a plaintiff must establish "affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." <u>Id.</u> (quoting <u>Volk v. D.A. Davidson & Co.</u>, 816 F.2d 1406, 1415 (9th Cir. 1987). If this doctrine of equitable tolling is invoked in the complaint, plaintiff must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts. <u>Volk</u>, 816 F.2d at

---

[3] Although Swan was named in the original complaint filed March 7, 2005, he was dismissed for failure to serve process. Mailly and Kiernan were not named in the Original Complaint. Because Defendants did not receive notice of the Original Complaint, the 1st. A. Complaint does not relate back to the date of the original. Fed. R. Civ. P. 15(c).

1415-1416. "[M]ere ignorance of the cause of action" by a plaintiff, or a defendant's silence or passive conduct will not toll the statute of limitations. Id. at 1416. Plaintiffs cannot establish concealment where they had actual or constructive knowledge of the facts that would establish their claim. Id. at 1415.

In the instant case, other than Plaintiffs' recitation of "unbeknownst," they set forth no facts which would establish why they could not have or should not have discovered the billing fraud from bills sent to them between 1996 and 2001. This lack of knowledge does not toll the statute of limitations. Plaintiffs also do not set forth any allegations of affirmative conduct by any of the Defendants that would lead a reasonable person to conclude that there would not have been a claim for relief.

First, the billing statements received by Plaintiffs between 1996 and 2001 are constructive notice of the facts that underlie their claims. See e.g., Pincay v. Andrews, 238 F.3d 1106, 1110 (9th Cir. 2001) (written disclosure of fee agreement coupled with the act of paying more than the agreed-upon fee deemed sufficient constructive notice to start the clock ticking for the statute of limitations); Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987) (receipt of defendant's annual report was sufficient constructive notice of the relevant facts to the securities fraud to trigger the running of the statute of limitations).

Second, the Court takes judicial notice of statements set forth in Plaintiffs' earlier filings with this Court and with the Superior Court of the State of California. Plaintiffs' 1st Am. Complaint filed in the instant case included facts relevant to their knowledge of the events, such as the termination date of the attorney-client relationship on March 6, 2001 (1st Am. Complaint ¶ 41) and Plaintiffs' awareness of problems related to by Kiernan, Swan, and Wilson on Plaintiffs' tax evasion matter through a court proceeding sometime on or about February 21, 2001 (id. at ¶ 95, Ex. I). Additionally, in the complaint of Carol Molus v. Frank Swan (GIN027961) filed in state court for professional malpractice stemming from these same fact, C. Molus stated:

> On or about March 6, 2001, as a result of Swan's failure to adequately represent Plaintiff, Plaintiff terminated SWAN's engagement in writing and requested the

1  return of any and all unearned funds.
2  Despite Plaintiff's request for the return of the funds, SWAN has failed and refused to do so, and as such Plaintiff has suffered damages.

(Swan's Req. Jud. Not. Ex. 1, complaint ¶¶ 21-22.)   In the first amended complaint in the same case, Plaintiff alleged the receipt of documents on or about March 2001, related to improper and unprofessional conduct in connection with Swan's representation of Plaintiffs, including improper and frivolous motions filed by Swan.  (Swan's Req. Jud. Not. Ex. 3, first amended complaint ¶ 36.)  This complaint also alleged that Swan refused to adhere to the parties' contractual agreements, failed to provide adequate legal representation, and charged fees in excess of the agreed engagements letters which were executed between January 1996 and February 27, 2000.  (Id.  ¶¶ 46-51.)

In sum, Plaintiffs suffered a cognizable injury when they recognized they paid for representation that they did not receive and/or were billed beyond the agreed upon terms between the parties.  As of at least March 2001, Plaintiffs had amassed sufficient information to have discovered the injury or at the very least to warrant an investigation that would have uncovered the injury.  See Pincay, 238 F.3d at 1110.   Therefore, these acts which all occurred before the "cut-off" date of June 16, 2002, when considered on their own as a pattern of acts under RICO are barred by the applicable statute of limitations.

However, a pattern of acts may be established with either of the remaining acts on June 28, 2002.  Under the separate accrual rule, an overt act will start a new limitations period if it is "a new and independent act that is not merely a reaffirmation of a previous act" and it "inflict[s] new and accumulating injury on the plaintiff."  Grimmett v. Brown, 75 F.3d 506, 513 (9th Cir. 1996).  Each of the invoices sent on June 28, 2002 was a new bill, rather than a reaffirmation of an earlier due invoice.  Each also inflicted a new injury because it demanded money for work allegedly not performed.  Therefore, these two acts are not barred by the statute of limitations and may support a RICO cause of action as two predicate acts of a pattern of racketeering activity.  See 18 U.S.C. § 1961(5) (defining a pattern to include two or more acts within ten years of each other).  Therefore, Swan's motion to dismiss Plaintiffs' 2nd Am. Complaint as barred by the statute of limitations is

**GRANTED** except as to the two billing statements dated June 28, 2002. As to these two billing statements, the motion is **DENIED**. Any conduct which occurred prior to the statute of limitations period, *i.e.*, prior to June 16, 2002, may be used to establish a pattern of racketeering activity. However, the recovery available on the RICO causes of action is limited to damages that occurred within the limitations period (on or after June 16, 2002) - a false billing invoice in the amount of $9,900 and another for $19,870. (2nd Am. Complaint ¶¶ 52, 72.)

### E. Motion in the alternative for summary judgment

Swan requests in the alternative that his motion to dismiss be treated as a motion for summary judgment. Although generally a motion to dismiss is confined to the pleadings, Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), "matters of public record" may be properly considered in a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). In the consideration of the motion to dismiss discussed above, only the pleadings of the Plaintiffs in state and federal court (matters of public record) were taken into consideration along with the instant complaint. Therefore, the Court finds that it is not necessary to convert Swan's motion into one for summary judgment to resolve the instant issues. The motion in the alternative for summary judgment is **DENIED AS MOOT**.

## V. MOTION FOR SANCTIONS

Under Fed. R. Civ. P. 11, sanctions may be imposed where a pleading is presented for an improper purpose, it is frivolous, or it lacks any evidentiary support. Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1508 (9th Cir. 1987). An "objective reasonableness" standard is applied when determining whether a complaint is well-grounded in fact and law. Id.

Here, Defendant Swan, joined by Defendants Kiernan and Mailly, move for sanctions against Plaintiffs and their attorneys under Rule 11. In particular, the motion requests the following: (1) dismissal with prejudice of the 2nd Am. Complaint (or in the alternative striking specific portions of the complaint); (2) monetary sanctions against

Plaintiffs C. and M. Molus; (3) monetary sanctions against Plaintiffs' lead attorney Douglas Dollinger and local counsel Heyman; (4) an order referring attorneys Dollinger and Heyman to the Court's Standing Committee on discipline; and (5) any other orders the Court deems appropriate to deter the future conduct of Plaintiffs and their attorneys.

Defendants argue that these sanctions are warranted because the RICO accusations are "lies." At this juncture, however, the merits of Plaintiffs' RICO allegations are unexamined - these are questions of fact that will be resolved in the future. Defendants have made no showing, other than their own opinions, that Plaintiffs' claims have no merit. Therefore, Defendant's motion for sanctions is **DENIED**.

## VI.   CONCLUSION

For the reasons herein, the Court rules as follows:

Swan's motion to dismiss under Fed. R. Civ. P 12(b)(6) is **GRANTED-IN-PART**; Counts I and III of Plaintiffs' Second Amended Complaint fail to state a claim and are **DISMISSED WITH PREJUDICE**. Swan's motion to dismiss under Fed. R. Civ. P 12(b)(6) is **DENIED-IN-PART** as to Counts II and IV.

Swan's motion to dismiss under Fed. R. Civ P. 8 and 9(b) is **DENIED**.

Swan's motion to dismiss as to a bar by the statute of limitations is **GRANTED** except as to any billing statements dated after June 16, 2002, as to which the motion is **DENIED**.

Swan's motion in the alternative for summary judgment is **DENIED AS MOOT**.

Defendants' motion for sanctions is **DENIED**.

**IT IS SO ORDERED.**

DATED:  August 13, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc:  Hon. William McCurine Jr.
     United States Magistrate Judge

   All Counsel of Record